STATE EX REL. JOSEPH J. BURRIS, ASSIGNESS OF JUDGMENT IN FAVOR OF FIRST WESTSIDE NATIONAL BANK OF GREAT FALLS, A NATIONAL BANKING ASSOCIATION, RELATOR, *v.* TOWER MANAGEMENT CORPORATION, DEFENDANT, AND CARL E. THISTED, ET AL., RESPONDENTS.

No. 10956.
Submitted May 3, 1965. Decided May 6, 1965.
401 P.2d 575.

Poore, Poore, McKenzie & Roth, Urban Roth (argued), Butte, for relator.

Swanberg, Koby & Strope, Randall Swanberg (argued), Gorham Swanberg, Great Falls, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an original proceeding. Relator on April 19, 1965, applied to this court for a writ of supervisory control, or other appropriate writ, alleging that he was the assignee of a judgment entered on September 2, 1964, in the district court of Cascade County in an action wherein First Westside Bank of Great Falls was plaintiff and Tower Management Corporation was defendant; that after entry of the judgment the individual respondents herein on September 9, 1964, filed a motion for leave to intervene and annexed thereto a proposed answer; that relator on January 15, 1965, filed his assignment of judgment and applied for issuance of a writ of execution and the respondent court ordered such writ to issue, and on this same date relator petitioned for appointment of a receiver pending the execution sale to protect the sole asset of the Tower Management Corporation; that an order to show cause was issued by the respondent court directed to the Tower Management Corporation and petitioning intervenors, requiring them to show cause on January 19, 1965, why a receiver should not be appointed. Further, that on January 18, 1965, the petitioning intervenors again moved for leave to intervene to (1) stay execution, and (2) participate in the proceedings looking towards the appointment of a receiver; that at the hearing on January 19th the respondent court indicated it would grant intervention and stay execution; that thereafter and on February 5, 1965, the respondent court entered an order granting intervention, staying execution, appointing a receiver, fixing bond on the stay of execution, and fixing the bond of the receiver.

Further, that by reason of such order, alleged to be error within jurisdiction from which no appeal lies, relator is precluded from satisfying his judgment out of the assets of the corporation; that the bond staying execution was in the sum of $10,000 and inadequate to protect relator; and that the entry of the order granting intervention constitutes a gross

abuse of discretion and a gross injustice and inequity to the relator.

Upon the application, annexed exhibits, and following ex parte presentation by counsel for relator, this court issued its order to show cause, directing that the respondent district court appear and show cause, if any it had, why the order of February 5, 1965, should not be declared erroneous and void. We further ordered that copies thereof be served upon counsel for the Tower Management Corporation and the petitioning intervenors, who were namd as respondents. At the hearing upon the order to show cause the respondent court and the intervening respondents appeared by brief and argument, contending that the action of the court was within its discretion and was proper in the circumstances existing.

It appears from the transcript of the proceedings before the district court on January 19, 1965, that the respondent court took judicial notice of the records, files and proceedings in two cases tried before it and now on appeal here, both having been briefed, argued and submitted for decision, being Cause No. 10809, Thisted v. Country Club Tower Corporation and Cause No. 10840, Thisted v. Tower Management Corporation.

The first of these actions, Cause No. 10809, was a declaratory judgment action involving the construction of certain instruments between the plaintiffs and Country Club Tower Corporation, et al. The second, referred to in this cause as No. 58, 355C of the Cascade County District Court, being Cause No. 10840 of this court, involved the corporate proceedings of Tower Management Corporation, is directors and stockholders, with respect to the loan made by Tower Management Corporation through its directors, being the loan upon which the judgment here in question was entered. In that cause a judgment was entered against the petitioning intervenors in the sum of $24,252.41, being at least in part for one-half of the $45,000 loan which resulted in the judgment assigned to relator. To partially explain the situation here, it should be said that the

petitioning intervenors own one-half or ten shares of the stock of Tower Management Corporation.

This corporation was formed to operate the Country Club Tower Apartment building; there are twenty shares of stock, one share to go to the owner of each of the twenty apartments in the building. The President of Tower Management Corporation owns one share, Highwood Corporation, controlled by the aforementioned President, owns one share, and relatives of his own one share, and seven shares are owned by Country Club Tower Corporation, a corporation also controlled by the President of Tower Management Corporation. Thus, the petitioning intervenors own ten shares and the other ten shares are owned or controlled by the President of the corporation, by virtue of the matters before stated.

This court is also aware that there was another action involving two apartment owners, one being a petitioning intervenor, the other the President of Tower Management Corporation, Cause No. 10922 of this court, which was also tried in the district court of Cascade County, Montana, and in which the transcript on appeal to this court was filed on April 12, 1965.

That the respondent court has been deeply involved in attempting to solve the difficulties between the Country Club Towers, Tower Management Corporation, and the various owners of apartments in the Country Club Towers is crystal clear from the record.

Also it appears that the loan was made by the Tower Management Corporation and the note executed by such corporation and signed by its President, who it is claimed has a conflict of interest in these various matters, and that he also guaranteed the note personally; that the suit upon the note was instituted solely against the Tower Management Corporation as defendant; that such action was instituted on August 17, 1964, summons was served upon the President on August 17, 1964, such summons providing a period of twenty days in which to appear in such action; that on August 20, 1964, the

President on behalf of the corporation filed a verified answer admitting all the allegations of the complaint but denied that the attorneys' fee requested was reasonable; counsel for the parties stipulated that the hearing of the case would be had on September 2, 1964, but interestingly neither counsel were counsel who had represented either the defendant corporation or petitioning intervenors in previous litigation and judgment was entered on September 2, 1964. The motion for leave to intervene was filed on September 9, 1964, thereafter taken under advisement by the court and still remains under advisement.

Relator here is a lawyer residing in Los Angeles, California. The date of his assignment was December 4, 1964, but such assignment was not filed until January 15, 1965, long after the petition for leave to intervene for the purpose of filing an answer and defending the suit was filed and taken under advisement by the court.

It appears from the hearing before the district court that relator's only interest was in the money, that he had bought a money judgment and was attempting to execute upon it; that he would object to any stay, that he did not wish to become involved with any stockholders or management dispute, that because of the continuous operating expenses no stay should be granted, but that if the court should order a stay to which of course he would except, he would be entitled to have a bond put up in the amount of whatever the damage would be or the amount of the judgment plus interest until it could be collected. It further appeared that the entire cost of the building, against some portion of which the levy has been made, was in the neighborhood of $500,000. It is obvious that relator would have been aware of many of these difficulties at the time he secured his assignment of the judgment in view of the allegations contained in the petition for leave to intervene and the answer then and for nearly ninety days previously a part of the court record. That he did so know is made clear by the allegations in his petition for the appointment of a receiver,

wherein he recites the reasons why the property is in imminent peril of being subject to waste, deterioration and destruction, and which would preclude him from collecting his judgment.

The respondent court having been so thoroughly briefed on the various matters involved in all litigation which had preceded, and the many contentions made by the respective parties, commented from the bench that the particular litigation arose as a by-product, or at least an ancillary proceeding, arising out of at least two other lawsuits. The court's view is well expressed in these remarks:

"THE COURT: In this particular lawsuit we already litigated the other one, and you may have more litigation after this. My only interest here now is to preserve, and I may be way out of bounds, but I would like to preserve the execution creditor right at the same time because of this unique thing and the possibility of irreparable injury to these people, one of whom is an incompetent person, and I take that into consideration here when we are in this litigation, there must be some way that I in equity can preserve the status quo, if you like, until this appeal is determined, and I think for the record here it is my understanding that the other two cases are in the Supreme Court, the first briefs have been filed of record, that the answer briefs are in the printers, and that a reply brief will then be filed and the other two cases will be at issue for argument before the Supreme Court in some short time.

"MR. SWANBERG: That is correct, Your Honor.

"THE COURT: And for the record here, I state that I do think to preserve the status quo and to avoid irreparable injury as well as can be done, and also, you might get to the question of multiplicity of suits that may result if this were not done at this time, and I think that almost everything under the general equity statute in relation to injunctions is applicable to this case at this time."

Now this court finds itself in much the same position. The two cases of which the district court took judicial notice are

before us on appeal, have been argued and await our decision; a third is also upon our docket but has not yet been submitted. To grant the request of relator will require us to overrule the exercise of discretion by the respondent court, and in doing so we may, as it appeared to the respondent court, cause irreparable injury to parties who have a vital and monetary interest in these matters. This, of course, would be at the behest of one who purchased a money judgment, at the time subject to further proceedings; or, to state it another way, at the request of one who "bought into a lawsuit."

As assignee of the First Westside Bank of Great Falls, relator, was aware of course that the President of Tower Management Corporation was a guarantor of the note individually, yet had not been joined as a defendent; confessed judgment, in effect, against the corporation; and, indeed, all within three days of the filing of the complaint! Also, as assignee, it appears that relator had knowledge of the President's challenged legal authority to make the loan on behalf of the Corporation. The guarantee of the President bears this out under circumstances here.

It does appear to us that the security levied upon is adequate in view of its cost and the amount of the judgment here in question, that the bond required of relators to be posted is likewise adequate, and that in justice to all concerned it would be equitable to permit us to resolve the questions raised upon the appeals now before us which may clarify the rights of the respective parties involved and permit their problems to be resolved.

For this reason we do not believe we should be called upon at this point to rule upon the various contentions of the parties here. This being an original proceeding the showing must be sufficient to move our discretion and it is not. We hold that the respondent district court did not abuse its discretion, that it has been properly exercised, and as the matter now stands

no irreparable injury should result to the assignee of the judgment, the relator.

The application for an appropriate writ is denied.

MR. JUSTICES JOHN CONWAY HARRISON, ADAIR, CASTLES and DOYLE concur.